GRANT v. POYAS.

HEIR AT LAW—RESULTING TRUST—INTESTATE'S ESTATE.—A sole heir, there being no debts, may maintain an action against another than the administrator to recover assets of his intestate's estate, and to recover property in which such assets have been invested as a resulting trust.

Before ALDRICH, J., Charleston, May, 1901.  Reversed.

Action by Mamie F. Grant against Joseph M. Poyas and Susan E. Mendenhall *et al.*  The appeal is from the following order sustaining demurrer to the two causes of action set out in the complaint:

"This action comes before this Court upon a demurrer to the complaint, interposed by the guardian *ad litem* of the infant defendants.  The complaint must be read as a part of this decree.  The most material averments thereof are: That Carry Whyte died intestate in Sept., 1887, leaving surviving her as sole next of kin, heir at law and distributee, her daughter, the plaintiff; that she left property worth $1,100 or more; that no letters of administration were ever granted on her estate; that plaintiff was born in Oct., 1875; that the defendants, Poyas and Mendenhall, the brother and sister of intestate, 'illegally and without authority of law took the property of this plaintiff, which she had inherited from her mother, Carry Whyte, and invested a part of it, $1,100, in certain described real estate; that Susan E. Mendenhall has executed a declaration of trust, whereby she declared that she held one undivided half portion of said real estate in trust for the use and benefit of the Duc defendants, who are the illegitimate children of Carry Whyte; that the defendants, Joseph M. Poyas and Susan E. Mendenhall,

held, and now hold, said real estate with a resulting trust for
the use and benefit of plaintiff; that there are no liens or
encumbrances on said realty of record, and that no person
other than the plaintiff and defendants are interested in said
real estate as owner or otherwise; and defendants have no
claim thereto.'

"The second cause of action alleges that defendants,
Poyas and Mendenhall, have wrongfully and illegally leased
said premises, and collected as rent of said premises $720,
and kept the same to their own use; that plaintiff was igno-
rant of her rights, 'confiding absolutely in the representa-
tions' of said defendants 'that' she had 'no rights in the
premises;' that no part of said rent has been paid plaintiff,
and 'that only within the last few days, to wit: one month,
has she learned her rights in the premises.'

"This case is predicated upon the theory that plaintiff, as
sole heir, next of kin and distributee of the estate of intes-
tate, which has never been administered upon, can maintain
an action for the recovery of the assets of intestate.

"The demurrer to both causes of action is upon the
grounds that, as matter of law, plaintiff is not entitled to
possession of the personal estate of intestate, that there is no
resulting trust to her, 'and, therefore,' plaintiff has not legal
capacity to sue, 'and also' because the complaint for the same
reasons 'does not state facts sufficient to constitute a cause of
action.' The second cause of action is demurred to upon the
same grounds, to wit: that plaintiff is not entitled, as matter
of law, to the rents and profits of the aforesaid real estate,
'and there is no resulting trust to her.' The grounds of the
demurrer must be read in full, as a part of this decree. The
allegations of the complaint must be liberally construed 'with
a view of substantial justice between the parties'—Code, sec-
tion 180. In doing so, the construction should be as favor-
able as the law warrants in favor of the complaint—*Childers*
v. *Verner,* 12 S. C., 1; *Wallace* v. *Cart, Ib.,* 576; and *Davis*
v. *Joyner,* 25 S. C., 123. This brings up the old and much
discussed question, 'Can a distributee of an intestate estate

maintain an action against a person, other than the adminis-
trator, to recover the assets of the estate?' In vol. 13 of the
Ency. of Plead. and Prac., on pages 2, 3 and 4, under the
caption *'Actions by Legatees and Distributees*—1. *Against
other than Personal Representations to Recover Assets*—a.
*Capacity to Sue—General Rules and Exceptions,'* the follow-
ing appears: "The general rule is that a legatee or distributee
cannot sue either at law or in equity to recover personal
assets of the estate, and that only an administrator or execu-
tor of the decedent can maintain such a suit.' But several
exceptions to this rule are as well established as the rule
itself; these exceptions being based upon the principle that
where the circumstances are such that the reason of the rule
ceased, the rule itself should cease. 'The general rule,' as
above cited, is undoubtedly the law of this State, and is fully
sustained by the South Carolina cases cited on page 3 of
the said work, in a note. I might add to these authorities
*Darwin* v. *Moore,* 58 S. C., 164; *Stoddard* v. *Aiken,* 57 S.
C., 134; *Heyward* v. *Williams, Ib.,* 235; *Harrison* v. *Light-
sey,* 32 S. C., 293; *Richardson* v. *Cooley,* 20 S. C., 350; and
many other cases. The 'reason of the rule' is that it is the
law—*Ita lex scripta est.* The law is clearly stated by Mr.
Justice Pope, in *Darwin* v. *Moore, supra,* pp. 166-7, as fol-
lows: 'Strictly speaking, there is no ownership of personal
property of an intestate by his children, * * * the legal title
to such personal property of an intestate is in his adminis-
trator.'

"We next come to the 'several exceptions' to the 'general
rule,' as above stated—many of said exceptions are noted in
foot-notes to the text—such are when administration, if
granted, would be a 'useless ceremony,' 'where there is col-
lusion, insolvency, unwillingness to collect the assets' by the
administrator, 'if there be no valid enforceable claims out-
standing in favor of creditors,' etc. The learned counsel for
plaintiff argued that the 'exceptions to the general rule' exist
in this State, and cited, as sustaining his position, *Huson* v.
*Wallace,* 1 Rich. Eq., 23. That case holds, 'where there are

no debts, and but one distributee, the distributee may take possession without administering.' To the same effect, see *Marsh* v. *Nail,* and *Spann* v. *Jennings,* cited and discussed in *Huson* v. *Wallace, supra.* See, also, *Markley* v. *Singletary,* 11 Rich. Eq., where this subject is discussed, and authorities are cited. It will be noted that the rights of distributees, in the cases cited, were interposed by them as a shield of defense, not as a sword of attack. Facts may be such as to constitute a defense, and yet insufficient to sustain affirmative action.

"I don't think that the case under discussion can be maintained as an exception to the general rule. I revere the memories of the great jurists who, in the past, adorned the bench of South Carolina. Their opinions cited, with approval, whenever the common law of England holds sway, illumine the jurisprudence of our State and country. It is my duty, and certainly my pleasure, to follow the law as declared by our Courts of last resort; but when the General Assembly in its wisdom, and in the exercise of its power, changes the law, it is the duty of the Courts to recognize and follow the statute. The old cases, such as Huson *v.* Wallace, were decided under the law as it then stood; since then new laws have been enacted. The act of 1789, as amended by the act of 1839, appears as section 2023 of the Rev. Stat. of 1893. This law was directory, and provided to whom letters of administration should be granted. It does not purport to be mandatory in the sense that it required either of the parties named to administer. These parties may or may not administer. The inducement to such parties to administer was to acquire, in a legal way, the legal title to the assets of the intestate in which they were interested. In this way they could collect the credits, and recover the assets of intestate. Experience has shown that the only safe way to distribute an intestate's estate was the legal way. It has often happened that new or unknown distributees or creditors have appeared, demanded their portions or debts from the 'sole heir,' who, without administration, took possession

of and consumed the estate. The Courts on numerous occasions have stated that it was best for the individual, and well for society, that the estate of every intestate should be legally administered upon. In this condition of affairs the General Assembly, on February 26th, 1873, passed an act entitled 'An act to provide for the administration of derelict estates'—see 15 Stat. of S. C., 413. This act, amended on March 17th, 1874 (*Ib.,* Stat. 704), now appears as section 2034 of the Rev. Stat. of 1893, and reads as follows: 'Whenever it shall come to the knowledge of any clerk of the Court of Common Pleas of any county in the State, that the estate and effects of any deceased person, as to which administration could legally be granted by the judge of probate of his county, remains for a period of six months entirely or partially unadministered, either by reason of no application for letters of administration or from any other cause, so that there is no legally appointed representative of such deceased person, it shall be the duty of such clerk of the court to make application to the judge of probate of the county for letters of administration on the estate of such deceased person, accompanied with a statement of the nature, conditions and value of the said estate, so far as it may be known to him, and thereupon it shall be the duty of such judge of probate to insert a notice of such application in the usual form for forty days in some newspaper published in such county, or if there be none such, in some adjoining county, and also at the door of the court house, and after such notice to grant to such clerk of the court letters of administration on the estate of such deceased person, with the will annexed, in case there be a will, and the clerk shall be held liable on his official bond for the faithful discharge of his duties as such administrator.' Derelict estates were such as are not administered. Under the old act, section 2023, they could exist. Under the new act, section 2034, they cannot exist, unless they also escape the vigilance of an officer of the law, whose duty it is to administer upon them. Under the earlier acts, administration *could be had;* under the later acts, adminis-

tration upon intestate estates *must* be had.    There is a clerk
of the court and judge of probate in the county of Charles-
ton, where the estate in question is located.    'It has come to
his knowledge' that 'the estate and effects' of Carry Whyte
are in his county, that it has remained there for a period of
six months and more entirely unadministered, and that there
is no legally appointed representative of the said Carry
Whyte.    The clerk of the court must have 'knowledge' of
these facts, for they are all substantially set out in the com-
plaint herein, the original of which, duly verified by the oath
of plaintiff, is upon file in his office and in his custody.    It
is the legal 'duty' of the clerk, under the specific mandate of
the law, to administer upon this estate.    It is equally the
duty of the judge of probate to grant letters of administra-
tion to the clerk.    If this be the law, and the facts are as
stated, this Court is bound to follow the law, and to adjudge
the legal title is not in her; that plaintiff has not the legal
capacity to maintain this action, nor has she the legal right
to the assets or the possession thereof for which she sues.
The legal title is not in her.    The estate is derelict, and must
be settled in the manner provided by law for the settlement
of such estates.    The fact that Carry Whyte died in 1887,
and that her estate has for all these years remained unadmin-
istered, cannot change the conclusions just stated; because
the 'estate' has been concealed, surreptitiously perhaps, and
the 'knowledge' of its existence come to the clerk but
recently, when this complaint was filed.    The fact that the
defendants, Joseph M. Poyas and Susan E. Mendenhall,
invested the money of the intestate, does not change the
result.    That money was an asset of Carry Whyte's estate,
and as such belonged to her administrator.    His appoint-
ment will relate back to the day of her death.    If there is a
resulting trust in the land, it is to the estate, and in favor of
the administrator, not this plaintiff.    *Harrison* v. *Lightsey,*
32 S. C., 295.

"This action cannot be maintained against Joseph M.
Poyas and Susan E. Mendenhall, as executors *de son tort* of

the estate of Carry Whyte, because: 1st. The complaint does
not charge them as such; and 2d. 'Persons chargeable as
executors *de son tort,* are not liable to account to the next of
kin, but to the duly appointed executor or administrator of
deceased.' *Haley* v. *Thames,* 30 S. C., 274, and authorities
there cited, including *Haselden* v. *Whitesides,* 2 Strob., 353.

"It follows that the demurrer must be sustained, and
accordingly, it is ordered, adjudged and decreed, that the
demurrer of Marion E. Duc, as guardian *ad litem* of the
infant defendants herein—Naomi C. Duc, Maud P. Duc and
Arthur L. Duc—to the complaint herein, be and hereby are
sustained, and that the complaint of the plaintiff herein be
and hereby is dismissed as against said infant defendants,
and that the plaintiff do pay the costs of said infants in this
action."

From this order the plaintiff appeals.

*Messrs. Young & Young,* for appellant, cite: *The heir at
law may consider this property either as personal or real,
and in either case may maintain this action:* Perry on Trusts,
sec. 828; 1 Rich. Eq., 1; 20 S. C., 350; 26 S. C., 589; 27 S.
C., 337; 43 S. C., 388; 38 S. W. R., 500; 11 Ency., 2 ed., p.
942, note 1, 741, 742; 11 Rich. Eq., 403; 30 S. C., 293; 48
S. C., 296; 30 S. C., 345; 52 S. C., 602; 43 S. C., 441; 58
Ia., 659; 5 Mason, 523; 11 Wall., 513; 1 Williams on Ex-
ecutors, 7 ed., 310, 216; 10 Ves., 93; 2 Strob., 353; 2 Stat.,
507; 3 Stat., 668; 5 Stat., 113; 48 S. C., 161; 2 Hill Ch., p.
87; Lewin on Trusts (Flint's ed., 1888), 892, 897; 4 DeS.,
474; 24 S. C., 179; 4 Rich. Eq., 80; Harp. Eq., 250; Rich.
Eq. Ca., 170; 1 Johns. Ch., 128; 7 Johns. Ch., 55; 25 S. C.,
43; Rice, 132; 1 Strob., 377; 4 Rich. Eq., 165; 4 S. C., 391;
11 S. C., 408; 24 S. C., 592; 48 S. C., 283; 26 S. C., 386;
27 Ency., 253-254. *Is there a resulting trust in favor of
plaintiff?* 1 Strob. Eq., 110; Lewin on Trusts (Flint's ed.),
143; Perry on Trusts, sec. 124; 2 Atl. R., 150; Pom. Jur.,
sec. 1031; Story Jur., sec. 1196; 1 Strob. Eq., 111; 19 S. C.,
134; 23 S. C., 256.

*Messrs. Buist & Buist* and *Mordecai & Gadsden,* contra, cite: *Suit for personal property of intestate can only be maintained by the personal representative:* 13 Ency. P. & P., 2, 3, 4; 2 Brev., 307; 1 McC. Eq., 191, 318, 506; 2 McC. Eq., 168; 9 S. C., 253; 20 S. C., 347; 32 S. C., 293; 57 S. C., 134, 235; 58 S. C., 164. *If there be a resulting trust, it is to the administrator and not to the plaintiff:* 32 S. C., 295.

February 18, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. The question raised by this appeal is whether a sole distributee of an intestate estate can maintain an action against a person other than the administrator to recover the assets of the estate where there are no debts against the estate. We say this is the question, because the complaint alleges in express terms that the plaintiff is the sole distributee of the intestate's estate, and in the ninth paragraph further alleges that "no person other than the plaintiff and the said defendants are interested in said premises as owners or otherwise, and that said defendants have no claim thereto." The language just quoted, in effect, alleges that there are no debts against the estate, for if there are creditors they certainly would have an interest in said property.

As the appeal is from orders sustaining demurrers to the complaint, it will be necessary to refer to it. The complaint is as follows:

"For a firse cause of action:

"1. That Carry Whyte, born Poyas, died intestate on or about the 11th day of September, A. D. 1887, leaving surviving her as sole next of kin, heir at law and distributee, her daughter, Mamie F. Whyte, who has since intermarried with Orville J. Grant, and is the plaintiff in this action.

"2. That at the time of her death the said Carrie Whyte left property worth $1,100 or more, and no letters of administration were ever granted on her estate.

"3. That the said Mamie F. Grant was born on the 24th

28—62

day of October, 1875, and at the time of her mother's death was a minor, to wit: of the age of twelve years.

"4. That on information and belief she alleges that the defendants, Joseph M. Poyas and Susan E. Mendenhall, born Poyas, the brother and sister of the said Carrie Whyte, deceased, illegally and without authority of law, took the property of this plaintiff, which she had inherited from her mother, Carry Whyte, and invested a part of it, to wit: the sum of $1,100, in the premises in the city of Charleston, State and county aforesaid, situate on the south side of Cooper street, and known by the number 67, and which are more fully described in the deed from John Brothers to Joseph M. Poyas and Susan E. Poyas (now Mendenhall), bearing date the 23d day of August, 1892, and recorded in the office of the register of mesne conveyance for Charleston County in book H 21, p. 364. A copy of which is hereto annexed, marked 'Exhibit A,' and made a part of this complaint.

"5. That on the same day as the date of the above mentioned deed, Susan E. Poyas (now Mendenhall) executed a declaration of trust and attached the same to the said deed, and which is recorded along with it, whereby she declared that she held one undivided half portion of the said lot of land described in 'Exhibit A,' in trust for the use and benefit of Marion E. Duc, Naomi C. Duc, Maud P. Duc and Arthur L. Duc; a copy of said declaration of trust is hereto annexed, marked 'Exhibit B,' and made a part of this complaint.

"6. That said Marion E. Duc, Naomi C. Duc, Maud P. Duc and Arthur L. Duc, mentioned in the declaration of trust aforesaid, are illegitimate children of Carry Whyte, and they have no share in her estate.

"7. That the said real estate described in 'Exhibit A' was bought by Joseph M. Poyas and Susan E. Poyas (now Mendenhall), for the sum of $1,100.

"8. That she is advised, and on information and belief alleges, that Joseph M. Poyas and Susan E. Mendenhall

have held the premises described in 'Exhibit A' with a resulting trust, for the use and benefit of this plaintiff.

"9. That there are no liens or incumbrances on the aforesaid premises appearing of record, and that no person other than the plaintiff and the said defendants are interested in said premises as owners or otherwise, and plaintiff alleges that said defendants have no claim thereto.

"For a second cause of action:

"1. That from the          day of September, 1893, to the          day of September, 1899, the said Joseph M. Poyas and Susan E. Mendenhall wrongfully and illegally have leased the said premises, and taken and collected rent for the use and occupancy of the said premises described in 'Exhibit A' at the rate of $10 a month, to wit: as this plaintiff is informed and believes, the sum of $720, and kept the same to their own use and benefit.

"2. That the plaintiff being wholly ignorant of her rights, and confiding absolutely in the representations of her said uncle, Joseph M. Poyas, and her said aunt, Susan E. Mendenhall, that she had no rights in the premises, suffered them to receive and take the rent as aforesaid, and that no part of the said sum of money so paid as rent has ever been paid to this plaintiff.

"3. That only within the last few days, to wit: one month, has she learned her rights in the premises."

The grounds of demurrer to the first cause of action were as follows: "I. Because the plaintiff has not legal capacity to sue, in that she is not entitled, as matter of law, to the possession of the property claimed to have been left by and to belong to the estate of the intestate, Carrie Whyte, and there is no resulting trust to her.  II. Because the complaint does not state facts sufficient to constitute a cause of action, in that the plaintiff is not entitled, as matter of law, to the possession of the property claimed to have been left by and to belong to the estate of the intestate, Carrie Whyte, and there is no resulting trust to her."

The grounds of demurrer to the second cause of action

were as follows : "I. Because the plaintiff has not the legal capacity to sue, in that she is not entitled, as matter of law, to the rents and profits of the property claimed to have been left by and to belong to the intestate, Carrie Whyte, and there is no resulting trust to her.    II. Because the complaint does not state facts sufficient to constitute a cause of action, in that the plaintiff is not entitled, as matter of law, to the rents and profits of the property claimed to have been left by and to belong to the estate of the intestate, Carrie Whyte, and there is no resulting trust to her."

His Honor sustained the demurrers and dismissed the complaint for the reasons stated in his order, which will be reported.

The plaintiff appealed upon several exceptions, but it will not be necessary to consider them in detail, as they raise practically the question hereinbefore stated, which we proceed to consider.    The authorities cited by his Honor, the Circuit Judge, amply sustain the general doctrine that an action to recover the assets of an intestate's estate can only be maintained by his administrator.    But the case of *Huson* v. *Wallace,* 1 Rich. Eq., 1, makes an exception to the general rule, when there is a sole distributee and there are no debts of the estate.    This case has not been overruled; on the contrary, the doctrine therein announced has been recognized in subsequent cases, among which may be mentioned, *Markley* v. *Singletary,* 11th Rich. Eq., 401, and *Richardson* v. *Cooley,* 20 S. C., 350—the last mentioned case having been decided after the passage of the act entitled "An act to provide for the administration of derelict estates," discussed by the Circuit Judge.    No case has been before the Supreme Court since that of Huson *v.* Wallace, involving the same facts, and what was said in subsequent cases must be construed with reference to the facts of the case in which the language was used.

Having reached the conclusion that the demurrer to the first cause of action should have been overruled, it necessarily follows that the Circuit Judge erred in sustaining the

demurrer to the second cause of action.    Under the allegations of the complaint, the plaintiff was the owner of the property left by her deceased mother.    It was impressed with a trust in the hands of Joseph M. Poyas and Susie E. Mendenhall.    The plaintiff, therefore, had the right to claim the property into which it was converted, as long as it could be identified.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.