### HENEGAN *ET AL.* v. DRAKE *ET AL.*

(143 S. E., 549)

1. DESCENT AND DISTRIBUTION—ON SON'S ACKNOWLEDGMENT AFTER MOTHER'S DEATH THAT MORTGAGE EXECUTED TO MOTHER AFTER HER CONVEYANCE OF PROPERTY PREVIOUSLY DEVISED TO SON AND DAUGHTER, TO ENABLE HIM TO SECURE LOAN, BELONGED TO DAUGHTER, HER HEIRS WERE ENTITLED TO RECOVER FULL AMOUNT THEREOF.—Where mother after executing will devising property to one son and daughter thereafter conveyed land to son to enable him to secure loan and retained mortgage on land, and son after mother's death acknowledged debt evidenced by mortgage as owing to sister pursuant to terms of mother's will devising property in equal shares to such son and daughter, interest accruing to heirs of daughter after her death was by virtue of sole ownership of mortgage rather than undivided one-half in case mortgage was considered as belonging to mother and passing under will.

2. MORTGAGES—SUBSEQUENT MORTGAGEE WITH NOTICE OF PRIOR MORTGAGES WAS BOUND TO VERIFY MORTGAGOR'S STATEMENT AS TO AMOUNT DUE.—Subsequent mortgagee having actual notice of prior mortgages was bound to inquire and verify statement made by mortgagor as to amount due on both mortgages.

3. MORTGAGES—DEVOLUTION OF TITLE TO INTEREST IN MORTGAGE CONSTITUTED EXTINGUISHMENT OF DEBT TO THAT AMOUNT.—Devolution

of title to interest in mortgage constituting a lien on land, title to which was in mortgagor, constituted extinguishment of debt to that amount.

Before DENNIS, J., Marlboro. Modified and remanded in certain respects, and otherwise affirmed.

Action by J. C. Henegan and others against W. R. Drake and others. Decree for defendants, and plaintiffs appeal.

*Messrs. Rogers & Ellerbe,* for appellants, cite: *"Payment":* 30 Cyc., 1180, 1263; 6 Conn., 373, 390; 20 S. C. L., 535. *The assent of the executor is necessary to give effect to a legacy of chattels:* 1 Bail., 504; 28 S. C. L., 52; 13 A. & E., 153. *Acceptance by legatee necessary to vest title:* 13 A. & E., 155; 40 Cyc., 1892; 1 Bail., 508. *Legatee may renounce or disclaim:* 40 Cyc., 1898. *"Merger":* 15 A. & E. Enc. L., 331. *Application of payments on debts:* 12 S. C., 37.

*Messrs. Tison & Miller,* for respondents, cite: *Funeral expenses come ahead of mortgages:* 130 S. C., 367. *"Merger":* 80 S. C., 217; 87 S. C., 47; Pom. Eq. (3rd Ed.), Sec. 797. *A promise to make a gift lacks a consideration and is unenforceable:* 13 C. J., 321; 10 Rich. Eq., 176; 9 Rich., 266. *Merger does not have to be pleaded:* Secs. 436-437, Code Proc.

January 25, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action instituted August 3, 1923, by certain heirs at law of one Sallie Henegan, deceased, to foreclose a mortgage executed by Jesse P. Henegan, now deceased, to his mother, Elizabeth E. Henegan, dated April 5, 1912, due one year after date, for $4,000.

The plaintiffs claim that while the mortgage was executed to Elizabeth E. Henegan, it was intended for the benefit of Sallie Henegan, and that at her death her interest in it (the

whole) devolved upon them and Jesse P. Henegan as her heirs at law. Sundry lien creditors, by mortgage and judgment, of Jesse P. Henegan, have been made parties to the foreclosure proceeding, and have set up their respective liens as will be developed later.

There is no controversy as to the amount and priority, over all other liens, of the mortgage of the Union Central Life Insurance Company. The amount due thereon, as of the date of the referee's report (which appears in the record without a date) is $3,733.34, plus 5 per cent. attorney's fees. It is conceded to be the first lien upon the property. The other liens, set up in the order of priority, are as follows:

(2) Bond and mortgage of Jesse P. Henegan to Elizabeth E. Henegan, $4,000, dated April 5, 1912, due one year after date, with interest from maturity at 7 per cent., upon which there *appears* to be a credit as of November 7, 1919, of $2,100.

(3) Note and mortgage of Jesse P. Henegan to W. R. Drake, $2,000, dated November 7, 1919, due January 1, 1924, with interest from November 1, 1919, at 8 per cent. and attorney's fees.

(4) Note and mortgage of Jesse P. Henegan to Planters' National Bank, $2,500, dated April 4, 1921, due November 1, 1921, with interest from maturity at 8 per cent. and attorney's fees. Credits: November 22, 1921, $298.59; December 7, 1921, $136.62. Assigned to W. R. Drake.

(5) Judgment of F. S. Royster Company against Jesse P. Henegan, $1,694.92, entered August 4, 1921.

(6) Note and mortgage of Jesse P. Henegan to People's National Bank. (No details given in the record.)

(7) Judgment of Enterprise Hardware Company against Jesse P. Henegan. (No details given in the record.)

(8) Southern Life & Trust Company. (No details given in the record.)

The real controversy in the case arises in connection with the bond and mortgage of Jesse P. Henegan to Elizabeth E.

Henegan, $4,000, dated April 5, 1912, due one year after date. Naturally, it is to the interest of the holders of liens junior to that mortgage to reduce the amount due upon it as much as possible. This controversy involves most unusual and complicated circumstances, which we shall endeavor to make clear.

It appears that one Elizabeth E. Henegan, the mother of Jesse P. Henegan, Sallie Henegan, James Henegan, John Henegan, and Annie Covington, was the owner of the tract of land in question, and in 1910 executed a will, in which she devised and bequeathed her entire estate to two of her children, Jesse P. Henegan and Sallie Henegan, in equal shares; she had no other property than the tract of land, and had already provided for her other children. She died in 1915 without having made any change in her will and owing no debts.

In the meantime, in 1912, the son, Jesse P. Henegan, who doubtless had been informed of the provisions of the will in favor of himself and his sister Sallie, attempted to negotiate a loan of $3,500 from the Union Central Life Insurance Company. He had nothing but his expectant interest in the tract of land under the will of his mother to offer as security for the proposed loan. In order therefore to consummate the loan, it was necessary that the title to the tract of land be vested in him. Accordingly on April 5, 1912, the mother, Elizabeth E. Henegan, conveyed the entire tract to Jesse P. Henegan. At the time of the conveyance to Jesse, and as a part of that transaction, Jesse gave to his mother his bond for $4,000, due 12 months after date, and secured it by a mortgage upon the land. Obviously to prevent this mortgage from constituting an obstruction to the negotiations for a loan from the insurance company, this clause was inserted:

"This mortgage will be second in rank on these premises, *one for the puchase price having priority over this,* of which notice is hereby given."

It seems to be assumed on all sides that the mortgage referred to as *"one for the purchase price"* was the mortgage which Jesse P. Henegan *expected* to give to the insurance company to secure the loan of $3,500. At any rate it is not disputed that the Insurance Company's mortgage is the first lien upon the property; perhaps for the reason also that it was recorded on May 6, 1912, within proper time after its execution and delivery, while the $4,000 mortgage, dated April 5, 1912, was not recorded until the following December.

The negotiations for a loan from the Insurance Company were closed by the execution and delivery of a note by Jesse P. Henegan, for $3,500, dated May 2, 1912, secured by a mortgage of the premises.

Elizabeth E. Henegan died about June, 1915, in North Carolina, and her will was probated there. No executor qualified, and no letters of administration have ever been issued in that State or in this. Sallie Henegan died December 10, 1919, intestate, never having married, owning no other property than her interest in the $4,000 mortgage, owing no debts, and leaving as her heirs at law the plaintiffs who are her brother, James C. and John H. Henegan, and the two Covington children of a deceased sister, Annie Covington. No administration has been taken out upon her (Sallie Henegan's) estate.

The case has a very irregular presentation in two aspects: Elizabeth E. Henegan died leaving a will which was probated in North Carolina; no letters were issued there and no ancillary administration has been taken out in this State. Sallie Henegan died intestate; no administration has been taken out on her estate. But as all parties interested are before the Court and it appears that there are no debts against either estate, the irregularities perhaps may be disregarded under authority of the cases of *Grant v. Poyas,* 62 S. C., 426; 40 S. E., 891. *Lanter v. Ins. Co.,* 114 S. C., 536; 104 S. E., 193. 11 Am. & Eng. Enc. Law, 742, 985.

The contention of the plaintiffs is that the $4,000 mortgage was the property of Sallie Henegan, and that at her death it was devolved upon them and Jesse P. Henegan, a fourth part to each, Jesse, James, John, and the two children of Annie Covington, deceased; that the interest of Jesse merged in his title to the land; and that the remaining three-fourths of the mortgage belongs to the other three interests. The opposing contention is that Sallie Henegan, prior to the death of Elizabeth E. Henegan, the mortgagee, acquired no interest in the mortgage; that it was the sole property of the mortgagee and passed under her will, one-half to Jesse and the other half to Sallie; that the interest of Jesse, which was one-half, plus one-fourth of the interest of Sallie, merged in his title to the land; and that the remainder, three-fourths of one-half (three-eights) is all that the mortgage is entitled to be foreclosed for.

The case was referred to J. K. Owens, Esq., as special referee, to hear and determine all issues. He filed a report, concluding that what is referred to as "the opposing contention," above, should be sustained; and upon exceptions to his report, his Honor, Judge Dennis, sustained the report of the referee practically in all particulars, except in some minor matters. From the circuit decree the plaintiffs have appealed, upon exceptions which present their contention as above stated.

It may be observed in the first place that the complaint is based upon the theory that the mortgage was the property of Sallie Henegan; it is so alleged in paragraph 4, which continues:

"But upon the death of the said Sallie Henegan, intestate, one-fourth of said mortgage indebtedness was inherited by the said J. P. Henegan as one of the heirs at law, and the said mortgage was to that extent paid by operation of law. That the remaining three-fourths part of the balance due on said mortgage descended by inheritance from the said Sallie Henegan to plaintiff J. C. Henegan,

J. H. Henegan, Darby Covington, and Annie Laurie Covington in the proportion of one-third to J. C. Henegan, one-third to J. H. Henegan, and one-third to Darby Covington and Annie Laurie Covington in equal shares."

In the third paragraph of the answer of the defendant W. R. Drake it is alleged:

"Admits so much of allegation 4 as alleges the inheritance by J. P. Henegan of one-fourth of the mortgage indebtedness, and that the remaining three-fourths was inherited as set out in said allegation."

That is exactly the contention of the plaintiffs, and it is difficult to see how, with such admission on the part of W. R. Drake, the question is an open one so far as he is concerned, for it necessarily amounts to an admission that the title to the $4,000 mortgage had vested in Sallie Henegan. But assuming that Drake is entitled now to contend that the title never vested in Sallie Henegan, that it passed under the will of Elizabeth E. Henegan to Jesse and Sallie, we think that the circumstances attending the execution of the $4,000 mortgage, and the subsequent conduct of the parties and their declarations, amply sustain the opposite conclusion from that arrived at by the special referee and the Circuit Judge.

It is easy to read between the lines, by the light of subsequent developments, that as the whole tract was devised to Jesse and his sister Sallie, and as the title to the whole was being placed in Jesse to enable him to borrow $3,500 from the Insurance Company, some provision should be made for the interest which Sallie was intended to have, and accordingly the $4,000 mortgage was executed. Perhaps this conclusion would not be entirely justified by the facts stated, but it is strongly supported by the events which followed.

On November 3, 1919, four years after the death of the mother, J. P. Henegan and Sallie Henegan, the sole devisees and legatees under the will of their mother, there being

no debts, and nothing having been done to settle her estate (in fact, her entire estate having passed to Jesse P. Henegan under the deed of April 5, 1912, with the exception of the $4,000 mortgage), came together and agreed upon a settlement of the estate. Jesse P. Henegan executed and delivered to Sallie Henegan a paper as follows:

"I agree to pay my sister Sallie Henegan, the $4,000 mortgage taken by my mother when she deeded me the land, having paid her $1,200, Nov. 3, 1919. [Signed] J. P. Henegan."

At the same time Sallie Henegan and Annie L. Covington (daughter of a predeceased daughter of Elizabeth Henegan) gave Jesse P. Henegan a paper confirming his title to the land which his mother had conveyed to him on April 5, 1912. This was more than four years after the death of Mrs. Henegan (June, 1915), and it is strange that if Jesse claimed an interest in the mortgage he would have signed the agreement set out above, acknowledging the whole debt to be due to Sallie, and inserting the evidence of part payment by him. Six days later, on November 9, 1912, Sallie Henegan delivered to Jesse P. Henegan a receipt reading:

"Received of J. P. Henegan $2,100 *as. part payment* on the mortgage *that I have* against my mother's estate. [Signed]   Sallie Henegan."

It appears that this receipt was made up of two amounts, $1,200, referred to in the paper dated November 3, 1919, delivered by Jesse P. Henegan to Sallie Henegan, and $900, presumably paid on November 9. This receipt was drawn up and signed by Annie L. Covington, a niece of Sallie Henegan, as she testifies, at the direction of her aunt, signing the aunt's name thereto. It was accepted by Jesse, constituting again an acknowledgment of the debt and evidence of *part payment* of it.

Going back a few months: On August 20, 1919, Jesse P. Henegan and the defendant W. R. Drake entered into a kind of double-barrelled option agreement, allowing Drake

to purchase a part of the premises, or to lend to Jesse P. Henegan $2,000. In that agreement this statement appears:

"It is understood that there are two mortgages on this tract of land, one to the (Union) Central Life Insurance Company, *and the other to Miss Sallie Henegan."*

This agreement was of course signed by Jesse Henegan and constitutes renewed acknowledgment of the debt.

On November 7, 1919, doubtless influenced by the letter of Sallie Henegan and Annie L. Covington, dated November 3, 1919, assuring the validity of the title of Jesse P. Henegan to the tract conveyed to him by his mother on April 5, 1912, Drake decided not to exercise the option to buy, but to lend Jesse P. Henegan $2,000, and consummated the loan by taking the note of Jesse P. Henegan for that amount, secured by a mortgage of the tract. The mortgage contains this statement:

" * * * It is free from claim except for the mortgage given by me to Elizabeth E. Henegan, recorded * * * and the mortgage given by me to the Union Central Life Insurance Company * * * it is stipulated and covenanted by J. P. Henegan that there is not in excess of $6,500 due on both of said mortgages."

The last is but a self-serving declaration that counts for nothing in view of his solemn acknowledgment that the debt was one owing by him to Sallie Henegan, which with the Insurance Company's mortgage amounted to much more than $6,500. Thus Drake had actual notice that the mortgage belonged to Sallie Henegan and was bound to inquire and verify the statement made by Jesse as to the amount due upon both mortgages. Certainly neither Sallie Henegan nor her heirs can be bound by such estimation.

In July, 1921, Jesse P. Henegan executed a note and mortgage to the Planters' National Bank for $2,500. Mr. Edwards, an officer of that bank at the time, testified: That he was informed of the Insurance Company's mortgage, but had no knowledge of the $4,000 mortgage or of the

mortgage to W. R. Drake for $2,000. That he assumed that the bank was obtaining a second mortgage, but was informed later by Drake that the bank had a *fourth,* instead of a *second* mortgage. That he approached Jesse P. Henegan about the matter. "He told me yes, there was such a mortgage (referring to the $4,000 mortgage), *and that he owed the same."* (This was nearly two years after the death of Sallie Henegan on December 10, 1919.) That Jesse sent him to James A. Drake to get the mortgage, which of course Drake declined to give up. That when told of that, Jesse replied: "Well, then, I guess we are in for it, *for I cannot deny that I owe the mortgage."*

That the devolution of title to one-fourth interest in the mortgage which he had given and was a lien upon land the title to which was in him constituted an extinguishment of the debt to that amount is well settled by the authorities cited in the circuit decree. It really is of small interest to the plaintiffs whether this extinguishment took place or not. In neither event could they claim any part of the interest of Jesse. That the $4,000 mortgage is entitled to a credit of $2,100 as of November 9, 1919, is not at all clear, but as the plaintiffs, in the brief of counsel, appear to concede that fact, it will be so considered.

The amount due upon the mortgage as of March 6, 1928, assuming that to be the probable date of a sale, would thus appear:                                    ﹨

April 5, 1913.

Principal due one year from date April 5,
  1912 .................................$4,000.00
Interest from April 5, 1913, to November 7,
  1919 ................................. 1,844.88
                                        ──────────
                                        $5,844.88
Credit November 9, 1919.................... 2,100.00
                                        ──────────
                                        $3,744.88

Interest November 9, 1919, to March 6, 1928     2,118.96

$5,863.84

Less one-fourth the interest of Jesse . . . . . . . . . .   1,465.96

Amt. due . . . . . . . . . . . . . . . . . . . . . . . . .$4,397.88

The judgment of this Court is that the decree appealed from be modified as herein indicated and that the case be remanded to the Circuit Court for such further proceedings as may be consistent herewith; in other respects it is affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.

## ON PETITION FOR REHEARING

*Per Curiam.* Ordered that the opinion herein be modified by sustaining the exceptions of W. R. Drake in reference to the priority of the claim for funeral expenses. Other grounds of petition dismissed, and order staying remittitur revoked.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, BLEASE, STABLER, and CARTER concur.